# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| KAREN S. LAWSON,<br>Plaintiff<br><br>vs<br><br>COMMISSIONER OF<br>SOCIAL SECURITY,<br>Defendant | Case No. 1:09-cv-078<br>Beckwith, J.<br>Hogan, M.J.<br><br><br>**REPORT AND**<br>**RECOMMENDATION** |

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner). Plaintiff appeals the Commissioner's determination that she is not disabled prior to the date she turned 55 years of age. This matter is before the Court on plaintiff's Statement of Errors (Doc. 13), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply memorandum. (Doc. 18).

## PROCEDURAL BACKGROUND

Plaintiff Karen Lawson was born in 1951 and completed the eleventh grade. She has no past relevant work history and has acquired no work skills. Plaintiff filed a Supplemental Security Income (SSI) application with a protective filing date of September 25, 2001[1] alleging an onset date of disability of December 7, 2000, due to a back injury, fatigue, weak muscles, depression, rheumatoid arthritis, and tissue disease. (Tr. 806-807, 849). Her application was denied initially, upon reconsideration, and by an Administrative Law Judge (ALJ) after a hearing.

---

[1]Plaintiff filed two previous SSI applications in October 1995 and in May 1999. (Tr. 70, 345). Those applications were denied by ALJs on October 10, 1997 and on December 7, 2000. (Tr. 669, 719). Plaintiff sought no further review on the May 1999 application.

On appeal, the Appeals Council remanded the case to the ALJ for further proceedings. (Tr. 760-63). In particular, the Appeals Council requested further development and evaluation of plaintiff's mental impairments. The Appeals Council also required the ALJ to properly evaluate and weigh the evidence from plaintiff's treating and examining doctors with regard to her physical impairments. (Tr. 761-62).

Three new administrative hearings were held at which plaintiff, who was represented by counsel, a medical expert (ME), and a vocational expert (VE) testified. (Tr. 1427, 1434, 1441). In January 2007, the ALJ issued a decision finding plaintiff to be disabled as of August 23, 2006, when she attained age 55, but not before that date. (Tr. 43). The ALJ determined that prior to August 23, 2006, plaintiff could perform other work in the national economy. (Tr. 44).

The ALJ determined that plaintiff suffers from the following severe impairments: lumbar spine arthritis and/or fibromyalgia; 2) left elbow ulnar nerve compression residuals; 3) dysthymia with recurrent major depression; 4) generalized anxiety disorder; and 5) borderline intellectual functioning. The ALJ found that such impairments do not meet or equal the level of severity described in the Listing of Impairments. (Tr. 43). The ALJ determined that plaintiff's subjective allegations lack credibility. (Tr. 43). According to the ALJ, plaintiff retains the residual functional capacity (RFC) to perform a reduced range of light work activities. The ALJ found that plaintiff lacks the residual functional capacity to: 1) lift more than ten pounds frequently or twenty pounds occasionally; 2) do any job requiring prolonged resting of the non-dominant left elbow on a hard surface; 3) climb ladders or scaffolds; 4) work at unprotected heights or around moving machinery; 5) follow complex instructions; 6) do any job involving over-the-shoulder job supervision or requiring claimant to work as part of a team with others; 7) have greater than

2

occasional contact with the public; or 8) do other than low stress work activity (*i.e.*, no job involving above average pressure for production, work that is other than routine in nature, or work that is hazardous). (Tr. 44). The ALJ determined that plaintiff has no past relevant work. The ALJ found that prior to August 23, 2006, the date plaintiff attained age 55, she was able to perform a significant number of other light and sedentary jobs in the national economy. (Tr. 44). As of August 23, 2006, plaintiff was found to be disabled under the Grid Rules for light work given her age, limited education, and lack of transferrable work skills. (Tr. 45).

Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case. Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To

3

establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d 962, 964 (6th Cir. 1984) (per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability. *Kirk v. Secretary of H.H.S.*, 667 F.2d 524, 538 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). In order to find plaintiff disabled on the basis of pain alone, the Commissioner must first determine whether there is objective medical evidence of an underlying medical condition. If there is, the Commissioner must then determine: (1) whether the objective medical evidence confirms the severity of pain alleged by plaintiff; or (2) whether the underlying medical impairment is severe enough that it can reasonably be expected to produce the allegedly disabling

pain. *Duncan v. Secretary of H.H.S.*, 801 F.2d 847, 852-53 (6th Cir. 1986). *See also Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994); *Jones v. Secretary of H.H.S.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This test, however, "does not require . . . 'objective evidence of the pain itself.'" *Duncan*, 801 F.2d at 853. Where a complaint of pain is not fully supported by objective medical findings, the Commissioner should consider the frequency and duration of pain, as well as other precipitating factors including the effect of the pain upon plaintiff's activities, the effect of plaintiff's medications and other treatments for pain, and the recorded observations of pain by plaintiff's physicians. *Felisky*, 35 F.3d at 1039-40.

Where the medical evidence is consistent, and supports plaintiff's complaints of the existence and severity of pain, the ALJ may not discredit plaintiff's testimony and deny benefits. *King v. Heckler*, 742 F.2d 968, 975 (6th Cir. 1984). Where, however, the medical evidence conflicts, and there is substantial evidence supporting and opposing a finding of disability, the Commissioner's resolution of the conflict will not be disturbed by the Court. *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983) (per curiam). In either event, the ALJ must articulate, on the record, his evaluation of the evidence and how it relates to the factors listed above. *Felisky*, 35 F.3d at 1039-41.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742

F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Blakely v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004); *Walters*, 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating

physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

If the Commissioner's decision is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 111 S. Ct. 2157, 2163 (1991).

Where the Commissioner has erroneously determined that an individual is not disabled at steps one through four of the sequential evaluation, remand is often appropriate so that the sequential evaluation may be continued. *DeGrande v. Secretary of H.H.S.*, 892 F.2d 1043 (6th Cir. 1990) (unpublished), 1990 WL 94. Remand is also appropriate if the Commissioner applied an erroneous principle of law, failed to consider certain evidence, failed to consider the combined effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). Remand ordered after a hearing on the merits and in connection with an entry of judgment does not require a finding that the Commissioner had good cause for failure to present evidence at the prior administrative hearing. *Faucher*, 17 F.3d at 173.

Benefits may be immediately awarded "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher*, 17 F.3d at 176. *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary*

*of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176. *See also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985).

## OPINION

The pertinent medical findings and opinions have been adequately summarized by the parties in their briefs (Doc. 13 at 4-8; Doc. 17 at 2-5)[2] and will not be repeated here. Where applicable, the Court shall identify the medical evidence relevant to its decision.

Plaintiff assigns two errors in this case: (1) the ALJ erred in his evaluation of the opinion evidence of plaintiff's treating physician and the medical expert who testified at the hearing in determining plaintiff's RFC; and (2) the ALJ misapplied the rule in *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997) in determining plaintiff's RFC. For the reasons that follow, the Court finds the ALJ's decision is not supported by substantial evidence and should be reversed.

Dr. Joseph Garland, plaintiff's treating physician for 15 years, states that plaintiff suffers from multiple medical problems, including chronic cervical strain, allergic rhinitis, depression, unspecified connective tissue disease with arthritis, fibromyalgia, severed seborrheic dermatitis of the scalp, hypothyroidism, acid reflux, tachycardia with arrhythmia, and obstructive sleep apnea requiring C pap. (Tr. 1264, 1239-1240). In October 1999, Dr. Garland opined that plaintiff

---

[2]The Court notes that the Commissioner's citation to "mild" connective tissue disease (Doc. 17 at 4, citing Tr. 1240) is a typographical error. Dr. Garland's diagnosis is "mixed" connective tissue disease. (Tr. 1240).

9

was limited to lifting and carrying no more than 10 pounds, to standing/walking for one hour per day (for only 15 minutes at one time), and to sitting for three hours per day (for only one-half hour at one time) due to her connective tissue disorder. (Tr. 1035-36). Dr. Elliot, the medical expert who testified at the ALJ hearing, testified that plaintiff's diagnosis of poorly differentiated connective tissue disease "would include the fibromyalgia." (Tr. 1416). Dr. Garland assessed that plaintiff should never climb, balance, stoop, crouch, kneel or crawl, and limited her ability to push and pull. (Tr. 1036). In a medical assessment provided to the Bureau of Vocational Rehabilitation in February 2001, Dr. Garland opined that plaintiff was limited to standing/walking for one to four hours per day, sitting for three hours per day, and lifting up to 10 pounds only occasionally, and was unable to use her hands for repetitive pushing or pulling or fine manipulation due to her mixed connective tissue disease. (Tr. 895-96). Dr. Garland also assessed that plaintiff was unable to perform full-time or part-time work. (Tr. 895). In May 2006, Dr. Garland opined that the combination of plaintiff's impairments precluded gainful employment. (Tr. 1264).

The ALJ rejected Dr. Garland's assessments, stating that the physical limitations imposed by Dr. Garland "are grossly disproportionate to the available objective medical evidence, and they thus lack the necessary supportability to entitle[] them to even deferential or other preferential weight." (Tr. 40). The ALJ gave "greater weight to the conclusions reached in the prior ALJ opinion" and to the opinion of Dr. Elliot, the medical expert who testified at the hearing, who "found little evidence of any reason for significantly restricting claimant from a physical perspective other than with respect to the use of her left elbow." (Tr. 41). In support of the ALJ's findings, the Commissioner points to some of the minimal findings on x-ray, MRI, and

10

clinical examination. (Doc. 17 at 10-11, citing Tr. 906-911 [Dr. Bhaiji's consultative examination of Jan. 2002], Tr. 1103 [Dr. Pedoto's examination of June 2002], and Tr. 1206 [Dr. Fishman's examination of Jan. 2005]). The Commissioner contends the ALJ reasonably rejected Dr. Garland's assessments in light of the lack of objective findings supporting such assessments. (Doc. 17 at 11).

The problem with the ALJ's decision and Commissioner's position is twofold. First, the ALJ failed to evaluate plaintiff's fibromyalgia impairment in accordance with Sixth Circuit precedent. Second, the ALJ failed to follow Social Security regulations and the law of the Sixth Circuit in evaluating and weighing Dr. Garland's opinions on plaintiff's limitations.

The ALJ's reliance on the lack of "objective" evidence to discount Dr. Garland's opinions is wholly inconsistent with plaintiff's diagnosis of fibromyalgia. Fibromyalgia is a condition which "causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances." *Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 817-820 (6th Cir. 1988).[3] Unlike other medical conditions, fibromyalgia is not amenable to objective diagnosis and standard clinical tests are "not highly relevant" in diagnosing or assessing fibromyalgia or its severity. *Id.* at 820. *See also Rogers v. Commissioner*, 486 F.3d 234, 243-44 (6th Cir. 2007) ("in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant"). Individuals suffering from fibromyalgia "manifest normal muscle strength and neurological reactions and have a full range of motion." *Rogers*, 486 F.3d at 244

---

[3] In *Preston*, the term "fibrositis" was used instead of "fibromyalgia." Currently, the preferred term is fibromyalgia, rather than the older terms fibrositis and fibromyositis. *See* The Merck Manual (17th ed. 1999), p. 481.

11

(quoting *Preston*, 854 F.2d at 820). As the *Preston* Court explained:

> [F]ibrositis [the term previously used for fibromyalgia] causes severe musculoskeletal pain which is accompanied by stiffness and fatigue due to sleep disturbances. In stark contrast to the unremitting pain of which fibrositis patients complain, physical examinations will usually yield normal results-a full range of motion, no joint swelling, as well as normal muscle strength and neurological reactions. There are no objective tests which can conclusively confirm the disease; rather it is a process of diagnosis by exclusion and testing of certain 'focal tender points' on the body for acute tenderness which is characteristic in fibrositis patients. The medical literature also indicates that fibrositis patients may also have psychological disorders. The disease commonly strikes between the ages of 35 and 60 and affects women nine times more than men.

*Preston v. Secretary of Health and Human Services*, 854 F.2d 815, 817-820 (6th Cir. 1988). A diagnosis of fibromyalgia involves testing a series of focal points for tenderness and ruling out other possible conditions through objective medical and clinical trials. *See Rogers*, 486 F.3d at 244. Fibromyalgia can be disabling even in the absence of objectively measurable signs and symptoms. *See Green-Younger v. Barnhart*, 335 F.3d 99, 108 (2d Cir. 2003) (fibromyalgia is a "disabling impairment" that can qualify an individual for disability payments even though "there are no objective tests which can conclusively confirm the disease."); *Kelley v. Callahan*, 133 F.3d 583, 589 (8th Cir. 1998) ("Fibromyalgia, which is pain in the fibrous connective tissue components of muscles, tendons, ligaments, and other white connective tissues, can be disabling."); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996) ("Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia.").

In the instant case, it is undisputed that plaintiff suffers from fibromyalgia. (Tr. 43, ALJ Finding #2). The two consultative examiners for the Social Security Administration, plaintiff's treating physician Dr. Garland, and plaintiff's rheumatologist all diagnosed fibromyalgia. (Tr.

12

544, 907, 660, 441, 1095, 1099). Dr. Garland's more than 300 pages of progress notes document plaintiff's consistent complaints of joint pain and stiffness, sleep problems and/or fatigue, depression, and tenderness on examination, all classic symptoms associated with the diagnosis of fibromyalgia. (Tr. 150-269, 294-314, 483-509, 554-633, 647-666, 940-966, 1014-1034, 1136-1227, 1264-1277). *See Rogers*, 486 F.3d at 244; *Preston*, 854 F.2d at 820. Dr. Garland's opinion is also supported by the progress notes from the rheumatology clinic at Miami Valley Hospital which confirm the diagnosis of fibromyalgia and document general muscle weakness, tenderness all over the body in almost all joints, fatigue, and more than 14 tender points on clinical examination. (Tr. 1095-1098, 1099).[4] Dr. Pedoto, the physical medicine and rehabilitative specialist to whom Dr. Garland referred plaintiff, reported in June 2002 that on examination plaintiff had tender points over a number of muscles, including tenderness in the cervical, thoracic, and lumbar paraspinals. He also noted tenderness over the trapezius, pectoralis major, left lateral epicondyle, bilateral greater trochanters, left pes ancillary and bursa, and left gastrocneumius. (Tr. 1103). Dr. Elliot, the medical expert who testified at the hearing, stated laboratory tests showing plaintiff has an elevated ANA (antinuclear antibodies) support the diagnosis of fibromyalgia. (Tr. 1417). Dr. Elliot testified that a lab test, such as a positive ANA, is a non-specific test but is a mark of inflammation. *Id.* Dr. Elliot stated, "When the patient's complaints are primarily those of muscle soreness and then these match those complaints, then it does indicate objectively that she does have some fibromyalgia." (Tr. 1417).

Based on the above, the ALJ's decision to disregard Dr. Garland's opinion based on the

---

[4]The American College of Rheumatology lists the criteria for the classification of fibromyalgia as a history of widespread pain in the body present for at least three months and pain in 11 of 18 tender points on digital palpation. *See* http://www.nfra.net/Diagnost.htm.

lack of "objective" evidence is without substantial support in the record. *Preston*, 854 F.2d at 820. The ALJ failed to discuss, let alone apply, the correct standard for assessing plaintiff's fibromyalgia in his decision. Rather, the ALJ (and the Commissioner in his brief) emphasized the lack of objective findings and "normal" clinical findings. (Tr. 40-41; Doc. 17 at 10-11). The lack of objective findings to support the fibromyalgia diagnosis does not undermine the limitations ultimately imposed on plaintiff by her treating physician and are wholly consistent with plaintiff's diagnosis. Where plaintiff's treating physician, specialist, and consultative examiners have diagnosed fibromyalgia, and the medical research indicates that there are a lack of objective tests to prove this condition, it was unreasonable for the ALJ to require objective findings. *Rogers*, 486 F.3d at 243-44; *Preston,* 854 F.2d at 819. The objective and "normal" findings cited by the ALJ have little relevance to plaintiff's diagnosis of fibromyalgia or to Dr. Garland's assessments of plaintiff's functioning based thereon. *Rogers*, 486 F.3d at 245; *Preston*, 854 F.2d at 820. These findings do not constitute substantial evidence outweighing the treating physician's opinions.

In addition, the ALJ failed to follow Social Security regulations and Sixth Circuit law in evaluating and weighing Dr. Garland's opinions on plaintiff's limitations. The Sixth Circuit has recently reaffirmed the long-standing principle that the "ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakely v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson*, 378 F.3d at 544; 20 C.F.R. § 404.1527(d)(2)). When the ALJ declines to give controlling weight to a treating physician assessment, "the ALJ must still determine how

14

much weight is appropriate by considering a number of factors, including the length of treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakely*, 581 F.3d at 406. In accordance with this rule, the ALJ must give "good reasons" for the ultimate weight afforded the treating physician opinion, based on the evidence in the record, and the reasons must be sufficiently specific to enable meaningful review of the ALJ's decision. *Id.* (citing 20 C.F.R. § 404.1527(d)(2); Social Security Ruling 96-2p, 1996 WL 374188, at *5; *Wilson*, 378 F.3d at 544). The ALJ's failure to adequately explain the reasons for the weight given a treating physician's opinion "*denotes a lack of substantial evidence*, even where the conclusion of the ALJ may be justified based upon the record." *Blakely*, 581 F.3d at 407 (emphasis in the original and quoting *Rogers v. Commissioner*, 486 F.3d 234, 243 (6th Cir. 2007)).

In this case, the ALJ failed to evaluate Dr. Garland's assessments in accordance with Sixth Circuit precedent and the Social Security regulations and give "good reasons" for rejecting the treating physician's opinions. While the ALJ specifically declined to give controlling weight to Dr. Garland's opinions, there is no indication from the ALJ's decision that he considered the regulatory factors in determining the weight to afford Dr. Garland's opinions, including the length, frequency, nature, and extent of the treatment relationship and the consistency of Dr. Garland's conclusions. *Blakely*, 581 F.3d at 406. The ALJ failed to assign any weight to Dr. Garland's opinions although certain factors support affording Dr. Garland's opinions great weight. Dr. Garland has treated plaintiff since at least 1992 (Tr. 234) and appears to have been intimately involved in plaintiff's care. The record contains 15 years-worth of progress notes

15

documenting Dr. Garland's clinical examinations, tests, referrals, and treatment for plaintiff's fibromyalgia, connective tissue disease, positive ANA, and numerous other impairments. (Tr. 150-269, 294-314, 483-509, 554-633, 647-666, 940-966, 1014-1034, 1136-1227, 1264-1277). This wealth of information places Dr. Garland in the best position to assess plaintiff's functional capacity from the standpoint of her overall condition.

Dr. Garland's opinion on plaintiff's limitations is also consistent with that of Dr. Pedoto. Based on his examination, Dr. Pedoto estimated that plaintiff could sit for six of eight hours a day with breaks every 30 to 60 minutes; could walk or stand one hour a day with breaks every 15-30 minute; should avoid twisting, crawling, squatting, or ladders; and would have difficulty with repetitive hand or foot movements. Dr. Pedoto concluded that Ms. Lawson was "most appropriate for a sedentary type position with occasional lifting in the range of 10 pounds." (Tr. 1103).

While Dr. Elliot, the medical expert, testified that fibromyalgia might warrant some degree of restricted activity, he testified that fibromyalgia, as a medical condition, "does not establish any kind of total disability." (Tr. 1417). Not only is Dr. Elliot's opinion that fibromyalgia can never be a disabling impairment inconsistent with the legal authority set forth above, *see Preston*, 854 F.2d at 820, it is clearly established by law that the opinion of a non-treating medical advisor such as Dr. Elliot does not constitute substantial evidence to overcome the properly supported opinion of a physician who has treated a claimant over a period of years. *Lashley v. Sec. of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983); *see also Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987) (the opinion of a non-examining physician "is entitled to little weight if it is contrary to the opinion of the claimant's treating physician."). In

any event, on cross-examination, Dr. Elliot admitted, "Truthfully, I can't really tell you what sort of restrictions that she should have. I haven't examined her." (Tr. 1419). Dr. Elliot also testified he had no basis for disagreeing with the limitations imposed by Dr. Garland. (Tr. 1419). Dr. Elliot's opinion, in context, does not amount to substantial evidence to discount Dr. Garland's opinion and to support the ALJ's RFC finding.

The ALJ's rejection of Dr. Garland's opinion is inconsistent with the legal standards applicable for determining the weight to a treating physician's opinion in fibromyalgia cases and lacks substantial support in the record. *Blakely*, 581 F.3d at 407. Although the ALJ was not bound by Dr. Garland's opinion, the ALJ was obligated to articulate "good reasons" based on the evidence of record for not giving weight to the treating physician's opinion. *Wilson*, 378 F.3d at 544. He failed to do so in this case. Accordingly, the ALJ's decision is not supported by substantial evidence and should be reversed. Plaintiff's first assignment of error should be sustained.

Plaintiff's second assignment of error asserts that the ALJ mis-applied the principles set forth in *Drummond v. Commissioner*, 126 F.3d 837 (6th Cir. 1997) in determining plaintiff's RFC. In *Drummond*, the Sixth Circuit held the doctrine of *res judicata* applies in social security cases and "[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ." *Id.* at 842.

In the instant case, the ALJ in the prior decision determined that plaintiff was limited to a range of light work with lifting no more than 15 pounds and the need to alternate sitting and standing. (Tr. 729). The ALJ in the instant case found plaintiff could lift up to 20 pounds and did not impose an alternate sit/stand requirement. (Tr. 44). Plaintiff contends the ALJ in this case

17

was bound by the additional limitations imposed by the ALJ in the previous case in determining plaintiff's RFC because there was no showing of medical improvement during the intervening time period.

Because the Court finds the ALJ's RFC decision is without substantial support in the record given the ALJ's failure to accord proper weight to plaintiff's treating physician and to properly assess plaintiff's fibromyalgia in accordance with Sixth Circuit law, the Court need not reach plaintiff's second assignment of error.

This matter should be remanded for an award of benefits. "[A]ll essential factual issues have been resolved and the record adequately establishes . . . plaintiff's entitlement to benefits." *Faucher v. Secretary of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 782 (6th Cir. 1987). Based on the residual functional capacity assessments of Drs. Garland and Pedoto, plaintiff would be unable to perform even sedentary work for a full 8-hour workday. Both assessments by these doctors would preclude plaintiff from performing work on a "regular and continuing" basis for a 40-hour work week as required by Social Security Ruling 96-8p. Several courts have observed that "the Commissioner takes the position that at step five of the sequential disability determination, only a claimant's ability to perform full-time work will permit an ALJ to render a decision of 'not disabled.'" *Barsotti v. Commissioner, Social Sec. Admin.*, 2000 W.L. 328024 (D. Or. March 13, 2000). *See Bladow v. Apfel*, 205 F.3d 356, 359 (8th Cir. 2000); *Kelly v. Apfel*, 185 F.3d 1211, 1214 (11th Cir. 1999); *Sims v. Apfel*, 172 F.3d 879 (10th Cir. 1999)(unpublished), 1999 W.L. 55334, at *3; *Matz v. Sisters of Providence in Oregon*, No. Civ. 98-1598-JO, 1999 W.L. 1201682 (D. Or. Dec. 8, 1999). In other words, "[a]

claimant is disabled if he cannot perform full-time work. SSR 96-8p." *Criner v. Barnhart*, 208 F. Supp.2d 937, 956 n.21 (N.D. Ill. 2002); *Gotz v. Barnhart*, 207 F. Supp.2d 886, 897 (E.D. Wis. 2002). "[P]art-time work does not constitute working on a 'regular and continuing' basis." *Carr v. Apfel*, 1999 W.L. 1489892, *5 (N.D. Ohio 1999).

Even if plaintiff were able to perform sedentary work on a full-time basis, she would nevertheless be found disabled under the Medical-Vocational Guidelines (the "Grids"). As of the date of her SSI application of September 25, 2001(protective filing date), plaintiff was an individual closely approaching advanced age, with a limited education, and no past work experience. Therefore, she would be found disabled on under Grid Rule 201.09 for sedentary work given her age, education, and work experience. *See* Grid Rule 201.09, Appendix 2 to Subpart P, Part 404.

Thus, the proof of disability is strong and opposing evidence is lacking in substance. Since a remand in this matter would merely involve the presentation of cumulative evidence and would serve no useful purpose, *Faucher*, 17 F.3d at 176, this matter should be remanded for an award of benefits.

### IT IS THEREFORE RECOMMENDED THAT:

This case be REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) consistent with this opinion and remanded for an award of SSI benefits beginning September 25, 2001.

Date: 1/6/10

Timothy S. Hogan
United States Magistrate Judge

19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KAREN S. LAWSON,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:09-cv-078
Beckwith, J.
Hogan, M.J.

## NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to these proposed findings and recommendations within **FOURTEEN DAYS** after being served with this Report and Recommendation ("R&R"). That period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within **FOURTEEN DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).