UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

Karen S. Lawson,  :  Case No. 1:09-cv-078
 :
    Plaintiff,  :
 :
vs.  :
 :
Michael J. Astrue, Commissioner  :
of Social Security,  :
 :
    Defendant.  :

**ORDER**

Defendant, the Commissioner of Social Security, has filed objections to the Magistrate Judge's Report and Recommendation concerning Plaintiff's claim for Social Security Disability benefits. The Magistrate Judge recommends that this Court reverse the final decision of the Commissioner denying Lawson's claim for disability benefits. (Doc. 19) His Report concludes that the ALJ did not evaluate Lawson's fibromyalgia impairment in accordance with Sixth Circuit precedent, and failed to properly consider her treating physicians' opinions about her functional limitations. The Commissioner objects, arguing the ALJ properly considered the treating physicians' opinions, and that his decision concerning her functional capabilities is supported by substantial evidence. (Doc. 20)

-1-

**FACTUAL BACKGROUND**

Lawson filed two prior applications for benefits, one in October 1995 and another in May 1999. Both of those applications were denied at the hearing level, and she did not pursue judicial review. Her current application dated September 25, 2001 alleges an onset disability date of December 7, 2000. (TR 806-807) She claimed she is disabled by a back injury, muscle weakness, rheumatoid arthritis and tissue disease, fatigue and depression. Her application was initially denied after a May 2003 ALJ hearing, at which both Lawson and Dr. Dan Elliott, a medical expert for the Commissioner, testified. (TR 1392-1426) The ALJ found that she had no exertional or strength limitations. (TR 744) The Appeals Council vacated this decision and remanded the case with instructions to further evaluate Lawson's mental impairments, as well as her treating physicians' opinions concerning the extent of her physical impairments. (TR 760-763)

After remand, the ALJ conducted an additional hearing on October 5, 2006, at which Lawson, a psychological expert, and a vocational expert all testified. (TR 1441-1480) The ALJ subsequently issued a decision in which he found that Lawson suffers from several severe impairments: (1) lumbar spine arthritis and/or fibromyalgia; (2) left elbow ulnar nerve compression residuals; (3) dysthymia with recurrent major depression; (4) generalized anxiety disorder; and (5) borderline

intellectual functioning.  The ALJ found that none of these impairments meet or equal the Listings.  Based upon his assessment of the record evidence, the ALJ found that Lawson lacked the residual functional capacity to: (1) lift more than ten pounds frequently or twenty pounds occasionally; (2) do any job requiring prolonged resting of her left elbow on a hard surface; (3) climb ladders or scaffolds; (4) work at unprotected heights or around moving machinery; (5) follow complex instructions; (6) do any job involving over-the-shoulder job supervision or requiring claimant to work as part of a team with others; (7) have greater than occasional contact with the public; or (8) do other than low stress work activity (i.e., no job involving above average pressure for production, work that is other than routine in nature, or work that is hazardous).  These limitations are generally compatible with a limited range of light work.  (TR 35-36) Although Lawson lacks past relevant work experience or skills, the ALJ concluded that she was able to perform a significant number of available jobs prior to August 23, 2006, her 55th birthday.  After that date, the ALJ found Lawson to be disabled under the Medical-Vocational Guideline Rules, given her age, the RFC assessment, her limited education,

and her lack of work skills.[1]  (TR 42-43)

Lawson unsuccessfully sought review of this decision by the Appeals Council, and then timely filed a complaint in this Court. She claims two errors in the Commissioner's decision: (1) the ALJ's residual functional capacity assessment improperly rejected the opinions of her treating physicians concerning the limitations caused by her fibromyalgia, opinions that the Commissioner's medical expert did not contradict; and (2) the ALJ misapplied Drummond v. Commissioner of Social Security, 126 F.3d 837 (6th Cir. 1997) by rejecting some of the physical limitations adopted in the prior December 2000 ALJ opinion.

The Magistrate Judge concluded that the ALJ failed to evaluate Lawson's fibromyalgia impairment as required by Sixth Circuit precedent.  He also found that the ALJ improperly evaluated and weighed the opinions of Dr. Joseph Garland, Lawson's long-standing primary treating physician, concerning Lawson's physical limitations.  In three separate assessments, Garland found that Lawson was limited to lifting and carrying no more than ten pounds, standing or walking for one hour per day, and sitting for three hours per day due to her mixed connective tissue disorder and/or fibromyalgia.  Garland consistently opined

---

[1] See Rule 202.01, 20 C.F.R. Part 404, Appendix 2, deeming individuals capable of light work who are of "advanced age" (55 or older), with limited education and no previous work skills, to be disabled.  The Commissioner did not appeal this portion of the ALJ's decision.

-4-

that due to these limitations, Lawson was incapable of full or part time work. (TR 1035-36, 895-96, and 1264) Dr. Pedoto, who examined Lawson in June 2002 at Dr. Garland's request, found that Lawson was "most appropriate for a sedentary type position with occasional lifting in the range of 10 pounds." (TR 1103) His restrictions were consistent with Dr. Garland's.

The ALJ relied on the 2003 testimony of Dr. Dan Elliott, the testifying, non-examining medical expert. (TR 41) Dr. Elliott, a retired general surgeon, noted the absence of a recorded trigger point test to confirm Lawson's fibromyalgia diagnosis. (TR 1418) While he accepted the treating physicians' diagnosis of "some form of fibromyalgia," he noted a lack of clinically-documented joint changes. (TR 1410) He also admitted that positive joint findings (such as swelling) were not necessary to a diagnosis of fibromyalgia. (TR 1413) When asked about the restrictions recommended by Lawson's treating physicians, Elliott responded: "Truthfully, I can't really tell you what sort of restrictions that she should have. I haven't examined her. ... I have no basis for disagreeing [with Dr. Garland's functional assessments]." (TR 1419) The ALJ concluded that Dr. Garland's functional capacity assessments "are grossly disproportionate to the available objective medical evidence, and they thus lack the necessary supportability to entitle[] them to even deferential or other preferential weight." (TR 40) He specifically cited the

minimal x-ray findings, Lawson's "unremarkable" MRI, and her largely normal clinical examination results.

The Commissioner objects to the Magistrate Judge's Report, arguing that the Magistrate Judge improperly engaged in his own fact-finding, and independently weighed the record evidence. The Commissioner contends that the ALJ appropriately considered and then largely rejected Dr. Garland's opinions on Lawson's limitations because the record does not support her claims of disabling pain and lack of mobility. Therefore, the Commissioner argues that substantial evidence supports the ALJ's decision.

**DISCUSSION**

Under 42 U.S.C. §405(g), this Court reviews the Commissioner's decision by determining whether the record as a whole contains substantial evidence to support that decision. "Substantial evidence means more than a mere scintilla of evidence, such as evidence a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health and Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Rather, the evidence must be enough to withstand a motion for a directed verdict when the conclusion sought to be drawn from that evidence is one of fact for the jury. Id.

If the ALJ's decision is supported by substantial evidence,

the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health and Human Serv., 658 F.2d 437, 438 (6th Cir. 1981). The substantial-evidence standard "... presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision." Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (quoting Baker v. Heckler, 730 F.2d 1147, 1150 (8th Cir. 1984)). Moreover, the ALJ need not accept a medical opinion that a claimant is "disabled" (and therefore unemployable) as that determination rests with the Commissioner under 20 C.F.R. §404.1527(e)(1).

The district court reviews de novo the Magistrate Judge's report and recommendation regarding Social Security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

This Court has reviewed the extensive record in this case. That record confirms that Dr. Garland has treated Lawson since at least 1992. By the mid 1990's, Garland and Dr. Griffin, a rheumatologist at the Miami Valley Hospital to whom Garland referred Lawson, had both consistently noted that Lawson was suffering from an unspecified connective tissue disease. For instance, in October 1995 she complained of stiffness and

soreness in most joints, and lab tests revealed an elevated ANA and rheumatoid factor. Both of these are markers of inflammation and are consistent with fibromyalgia. Garland's and Griffin's treatment notes document over time Lawson's consistent complaints of muscle weakness, difficulty with sitting and standing or remaining in one position for any period of time, tingling or "pins and needles" sensations, and pain in her neck, back, and legs. On September 2, 1999, Griffin diagnosed poorly differentiated connective tissue disorder (a type of autoimmune disease).

Lawson was referred for an orthopedic consultation in April 1996 due to her continuing complaints of pain. That examination revealed no objective neurological findings and no skeletal abnormalities, and the doctor suspected that her pain was produced by the connective tissue disorder. (TR 1011)

Garland referred Lawson for an examination by Dr. Pedoto, a specialist in physical medicine and rehabilitation, on June 5, 2002. (TR 1102-1103) Dr. Pedoto found that Lawson could sit six to eight hours a day but only with frequent breaks, and could stand or walk only one hour with breaks every 15 to 30 minutes. She would have difficulty with repetitive hand or foot actions, and could only occasionally lift more than ten pounds. She would also need ergonomically proper equipment for any job. Dr. Pedoto believed that Lawson was most appropriate for a sedentary-type

position, but doubted she could successfully find long-term employment.

An exam for the state disability bureau on Aug 2, 2000 by Dr. Gary Ray, medical rehabilitation specialist, noted tenderness throughout Lawson's cervical, thoracic, and lumbosacral areas. There was also tenderness throughout her upper and lower extremities, although no joint abnormalities such as swelling or redness were observed. Dr. Ray opined that Lawson had mild osteoarthritis and fibromyalgia, but that she was not significantly restricted in her abilities to lift, carry, sit or stand. (TR 542-550) Another examination performed for the state bureau on Jan 24, 2002 by Dr. Bhaiji found no range of motion limitations, no swelling, and a normal grip in both hands. Bhaiji noted Lawson's generalized muscle weakness and tenderness, but no specific areas of such discomfort. Lawson demonstrated generalized tender points to palpation. (TR 905-907)

The record also reflects that Lawson sought assistance from Jewish Vocational Service, a program that assists disabled individuals with finding jobs. Lawson worked with a job counselor there for over a year, from June 2001 through June 2002. The counselor noted that Lawson exhibited lower back pain during their weekly meetings. Lawson's physical restrictions, including limited stamina, no pushing and pulling, and no lifting over ten pounds, made her job placement almost impossible. (TR

880)

According to a recent Merck Manual entry, fibromyalgia is "a common nonarticular disorder of unknown cause characterized by generalized aching (sometimes severe), widespread tenderness of muscles, areas around tendon insertions, and adjacent soft tissues, as well as muscle stiffness, fatigue and poor sleep." A diagnosis is based on clinical findings of generalized pain and tenderness, especially if disproportionate to physical findings; negative laboratory results despite widespread symptoms; and fatigue as a predominant symptom. Tender or "trigger" points in the cervical, thoracic, and lumbar spinal areas, as well as the extremities, are palpated. Merck's notes that the "classic" diagnosis requires 11 of 18 of the specified points to produce pain upon palpation, but that "most experts no longer require a specific number of tender points to make the diagnosis as originally proposed (more than 11 of 18). Patients with only some of the specified features may still have fibromyalgia." Merck Manual Online Medical Library, http://www.merck.com (last visited February 22, 2010).

The Sixth Circuit has noted that, "in light of the unique evidentiary difficulties associated with the diagnosis and treatment of fibromyalgia, opinions that focus solely upon objective evidence are not particularly relevant ...". Rogers v. Commissioner, 486 F.3d 234, 243-44 (6th Cir. 2007). See also

Preston v. Sec'y of Health & Human Services, 854 F.2d 815, 820 (6th Cir. 1988) (noting that fibromyalgia can be a severe disabling impairment, and objective tests are of little help in determining its existence or its severity).  In Rogers, the ALJ rejected a claimant's diagnosed fibromyalgia as a severe impairment (at step two of the sequential evaluation process). The Sixth Circuit found that the rejection had improperly influenced the ALJ's consideration of the treating physician's opinion about the effects of that disease on the claimant's functional capacity.  Rogers, 486 F.3d at 243.  The court noted that the ALJ failed to address the consistent diagnosis of fibromyalgia in the clinical record, and did not apply the standard diagnostic criteria, which does not require "objective" clinical evidence.  The ALJ had instead relied on the opinions of non-examining disability reviewers who were not specialized in rheumatology.

Here, the ALJ found that Lawson's fibromyalgia was a severe impairment, specifically citing Dr. Ray, Dr. Pedoto, and the December 2000 findings of the prior ALJ.  The Commissioner does not dispute the diagnosis, but contends that the ALJ's RFC limitations based upon that impairment are supported by substantial evidence.

Lawson's treating physicians, primarily Dr. Garland but also supported by Dr. Pedoto and Dr. Griffin's treatment notes,

-11-

believe she is incapable of anything but restricted sedentary work at best.  The Social Security regulations governing treating physician opinions provide that, "... if the opinion of the treating physician as to the nature **and severity** of a claimant's condition is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record," it will be given controlling weight.  <u>Rogers</u>, 486 F.3d at 242 (internal citation and quotations omitted; emphasis added).  If the Commissioner finds that a treating physician's opinion is inconsistent with or unsupported by the record, the following factors should be discussed in determining the weight that should be accorded that opinion: (1) the length of the treatment relationship and frequency of contact; (2) the nature and extent of that relationship; (3) the evidence provided to support the opinion; (4) consistency between the opinion and the entire record; (5) the treating physician's specialty; and (6) any other relevant factors such as the extent to which the medical source is familiar with other information in a claimant's case record.  See 20 C.F.R. §416.927(d)(2)-(6).

Applying these factors, Dr. Garland's opinion should have been accorded significant, if not controlling weight.  He has treated Lawson for almost 20 years, while Dr. Elliott did not examine Lawson.  Garland's long-standing relationship with Lawson

provides a sound basis to credit his conclusions in lieu of Dr. Elliott's.  Garland's opinion on Lawson's restrictions is based upon his own observations and findings, as well as the results of the examinations and tests that he ordered, particularly Dr. Pedoto and Dr. Griffin.  Dr. Garland is a family practitioner, Dr. Griffin specializes in rheumatology, and Dr. Pedoto in physical medicine and rehabilitation.  Given the nature of fibromyalgia, as recognized by the Sixth Circuit, the lack of objective clinical findings or tests does not contradict their opinions on Lawson's functional capacity, but rather is consistent with the entirety of the evidence.  The treating physicians, particularly Garland, are also far more familiar with Lawson's entire history, while Elliott was not.

The ALJ rejected Dr. Garland's opinions and relied more heavily upon the opinion of Dr. Elliott.  Elliott did not examine Lawson, and believed that she was not significantly limited in any physical respect save for her left elbow problem.  But as noted above, Dr. Elliott admitted that he could not really say what sort of physical restrictions would be appropriate for Lawson, and had no basis upon which to disagree with Garland's assessment.  Moreover, Dr. Elliott did not have the benefit of Dr. Pedoto's report, which more closely documents the areas of tenderness and pain he observed, or of the Jewish Vocational Service evaluation.  Both of these reports were first included in

-13-

the record with Lawson's request for Appeals Council review of the 2003 Decision. (TR 758) Dr. Elliott did not testify again in the most recent 2006 hearings.

The ALJ also discounted Dr. Bhaiji's RFC restrictions because his objective findings were normal. Dr. Bhaiji specifically noted both generalized muscle weakness and tenderness, as well as tender points to palpation. The fact that Bhaiji did not document any swelling or range of motion limitations is an insufficient basis to reject his conclusions. Similarly, Dr. Ray's examination in August 2000 documented extensive tenderness in all areas typical to fibromyalgia pain. But largely due to a lack of joint swelling or redness and normal range of motion, Dr. Ray concluded her impairment did not significantly restrict her physical function, a conclusion the ALJ also specifically cited. But once again, joint swelling and restricted range of motion are not accepted or required diagnostic criteria, and their absence alone does not support with a finding of no functional limitations. The ALJ similarly questioned Pedoto's assessment because he noted "only some findings of general tenderness." (TR 40) But while Pedoto's written report does not specifically recite the number of trigger points, it clearly documents tender points over twelve muscle areas that are typical to fibromyalgia.

The ALJ also discounted Lawson's subjective complaints,

because her descriptions of her problems varied over time and did not correlate with the objective medical findings. Neither of these observations are a proper basis to reject her consistent descriptions of stiffness, lack of ability to move, and pain. Fibromyalgia, like other chronic conditions, is likely to cause different magnitudes of symptoms over time, especially in view of the fact that its clinical causes are simply unknown. And the fact that her subjective complaints do not correlate with the objective medical findings is the hallmark of a fibromyalgia diagnosis. See Preston, 854 F.2d at 820 ("fibromyalgia patients 'manifest normal muscle strength and neurological reactions and have a full range of motion.'") Garland, Griffin, and Pedoto do not express any concerns about Lawson's credibility in reporting her symptoms. Nor did the job counselor at Jewish Vocational Service, who worked closely with Lawson for over a year.

The ALJ also discounted Lawson's subjective complaints because he found that Lawson was able to function relatively independently, and that she "has been able to do housework, pursue pasttimes such as crafts, reading and videogames, watch her grandchild, drive, and shop." (TR 41) He also noted that Lawson's impairments "have been managed conservatively without resort to major surgery or other intensive therapies ...". (Id.)

Lawson actually testified that she was able to drive a couple times a week (TR 1396); that she had difficulty taking

pain medications and could not take most of what had been prescribed for her (TR 1398-99); that she could do some housework occasionally (TR 1401); she could read 4 to 6 hours a day (TR 1402); and she saw her daughter a couple times a week.  At the 2006 hearing, she described increasing difficulties sleeping at night.  (TR 1447-1449)  In Rogers, the Sixth Circuit specifically criticized the ALJ's reliance on a claimant's ability to engage in activities such as driving, cleaning her apartment, caring for her dogs, doing laundry, reading, performing stretching exercises, and watching the news, as justification for rejecting her subjective complaints of disabling pain.  The court noted that "these somewhat minimal daily functions are not comparable to typical work activities."  Id., 486 F.3d at 248.  This was especially true because the claimant's activity level was actually less than the ALJ's broad descriptions suggested.  Like the claimant in Rogers, Lawson's actual descriptions of her activity level do not suggest that she is relatively "active" nor contradict her descriptions of her physical limitations.  And the ALJ's critique of "conservative management" and a lack of surgery are simply inapposite to treating fibromyalgia and its symptoms.

    The Commissioner argues that the absence of documented neurological deficits or muscle atrophy clearly detract from Lawson's subjective complaints of disabling pain.  Since the ALJ "explained" why he rejected or discounted the opinions of both

Dr. Garland and Dr. Pedoto, the Commissioner argues that substantial evidence in the record supports the ALJ's RFC conclusions. The Court must disagree. As was noted in Rogers, the absence of neurological deficits, and the presence of normal muscle or grip strength, are precisely the type of clinical findings expected to be seen in fibromyalgia patients.

The Court therefore agrees with the Magistrate Judge and finds that the ALJ's assessment of Lawson's residual function capacity is not supported by substantial evidence in the record. For that reason, the Court need not address Lawson's second claim of error, regarding the ALJ's failure to adhere to Drummond and consider the prior ALJ's findings as binding.

The Court must determine whether to remand this case for rehearing, or to reverse the decision and order that benefits be paid. Under 42 U.S.C. §405(g), the Court has authority to proceed in either fashion. In order to reverse and award benefits, however, the Court must find that all essential facts have been resolved, and that the record adequately establishes a claimant's entitlement to those benefits. Faucher v. Secretary of Health and Human Services, 17 F.3d 171, 176 (6th Cir. 1994).

The Court agrees with both the Magistrate Judge and the Plaintiff that a remand is not necessary, because the record demonstrates that Lawson is entitled to benefits due to her disability. Setting aside Dr. Elliott's opinion that Lawson has

no physical restrictions (other than her left elbow), the medical opinions of her treating physicians support an ability to perform sedentary work at best.  Those opinions are entitled to controlling weight.  Rule 201.09 of the Medical-Vocational Guidelines would direct a finding of disability for Lawson at her 50th birthday given that restriction because, for the time period in dispute, she was "closely approaching advanced age," has limited education and no relevant past work experience.  To order a remand under these circumstances would simply result in unnecessary delay or submission of cumulative evidence.  Accordingly, this matter should be remanded for an award of benefits.  Felisky v. Bowen, 35 F.3d 1027, 1041 (6th Cir. 1994).

**CONCLUSION**

For the reasons discussed above, the Commissioner's objections to the Magistrate Judge's Report and Recommendation are overruled.  The Court hereby adopts the Magistrate Judge's Report and Recommendation in full.  The Court reverses the decision of the Commissioner that Plaintiff is not entitled to an award of disability benefits, and remands this matter for an award of benefits consistent with this decision.

SO ORDERED.

THIS CASE IS CLOSED.

DATED: March 2, 2010        s/Sandra S. Beckwith
                            Sandra S. Beckwith
                            Senior United States District Judge